# United States Court of Appeals for the Federal Circuit

---

**WORLDS INC.,**
*Appellant*

v.

**BUNGIE, INC.,**
*Appellee*

---

2017-1481, 2017-1546, 2017-1583

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2015-01264, IPR2015-01319, IPR2015-01321.

---

Decided: September 7, 2018

---

WAYNE MICHAEL HELGE, Davidson Berquist Jackson & Gowdey, LLP, McLean, VA, argued for appellant. Also represented by GREGORY A. KRAUSS, ALDO NOTO.

MICHAEL T. ROSATO, Wilson, Sonsini, Goodrich & Rosati, PC, Seattle, WA, argued for appellee. Also represented by MATTHEW A. ARGENTI, Palo Alto, CA; RICHARD TORCZON, Washington, DC.

---

Before PROST, *Chief Judge,* O'MALLEY and TARANTO, *Circuit Judges.*

PROST, *Chief Judge*.

Appellant Worlds Inc. ("Worlds") appeals the final decisions of the Patent Trial and Appeal Board ("Board") invalidating three patents in three *inter partes* reviews ("IPRs"). Because we hold that the Board erred in its real-party-in-interest analysis, we vacate its decisions and remand for proceedings consistent with this opinion.

I

This consolidated appeal involves three related patents: U.S. Patent Nos. 7,945,856 ("the '856 patent"); 8,082,501 ("the '501 patent"); and 8,145,998 ("the '998 patent") (collectively, the "patents-on-appeal").[1] These patents generally relate to the computer-generated display of avatars in a virtual world, including methods and systems to determine which particular avatars are displayed in a given situation.

In 2012, Worlds asserted the patents-on-appeal, among other patents, against Activision Publishing, Inc. ("Activision") and other related entities in the District of Massachusetts. J.A. 2992–3002 (Compl.), 4902–04 (Am. Compl.). Activision develops, publishes, licenses, and distributes videogames. In the district court litigation against Activision, Worlds accused certain videogames, such as *Call of Duty*, of infringing claims of Worlds's patents.

Appellee Bungie, Inc. ("Bungie") is an independent videogame developer that has developed games such as *Halo*. Bungie also developed the series of products relevant to these appeals—the *Destiny* products. *Destiny* is developed by Bungie and distributed by Activision.

---

[1]    The case numbers of the IPRs on appeal are: IPR2015-01264 (the '856 patent); IPR2015-01319 (the '501 patent); and IPR2015-01321 (the '998 patent).

Bungie is not a party to the litigation between Worlds and Activision. In November 2014, however, Worlds notified Activision that it intended to add *Destiny* as an additional accused product in the district court litigation. J.A. 2944. Approximately six months after Worlds notified Activision of its intent to add Bungie's products to the litigation, Bungie filed six IPR petitions, including the three IPRs at issue in this case, challenging Worlds's patents.[2] These petitions were filed more than one year after Activision had been served with a complaint alleging infringement of the patents challenged in the IPR petitions.

Soon after Bungie filed its IPR petitions, Worlds moved under 37 C.F.R. § 42.51(b) for routine discovery or, alternatively, additional discovery, requesting information regarding whether Activision should have been named as a real party in interest to the proceedings, thus making the petitions time-barred under 35 U.S.C. § 315(b). J.A. 394–405.[3] To support its request for discovery, Worlds submitted evidence of a Software Publishing and Development Agreement ("DevPub Agreement") between Bungie and Activision.[4]

The DevPub Agreement provides that the *Destiny* products would be developed by Bungie and published by Activision. Under the Agreement, Bungie is responsible for conducting "legal reviews of the Products to ensure

---

[2]    The case numbers of the IPRs that are not on appeal are: IPR2015-01325 (the '998 patent); IPR2015-01268 (U.S. Patent No. 7,181,690); and IPR2015-01269 (U.S. Patent No. 7,493,558). Worlds did not appeal the final written decisions in these three IPRs.

[3]    The same motion was filed in all six pending IPRs. J.A. 394 n.1.

[4]    Worlds discovered the DevPub Agreement through its own independent investigation. *See* J.A. 400.

that all Intellectual Property and other rights are fully cleared for use." J.A. 2924. Such "legal reviews" are "subject to prior review and approval of Activision, (budget to [sic] mutually approved) such approval not to be unreasonably withheld." *Id.* The Agreement also contains certain representations and warranties, as well as indemnity provisions. J.A. 2933–36. And, the Agreement contemplates financial support from Activision to Bungie for development of the *Destiny* products. J.A. 2928–29.

Based on the DevPub Agreement, Worlds's discovery motion contained six specific requests for production seeking further details of the relationship between Activision and Bungie. J.A. 394–97. Bungie opposed the motion for discovery, J.A. 407–18, and the Board denied the motion in its entirety, J.A. 423–32. In doing so, the Board concluded that Worlds had not shown more than a "mere allegation" that something useful would have been found through the requested discovery. J.A. 430.

Four days later, Worlds filed its pre-institution Preliminary Response, arguing that Bungie should have named Activision as a real party in interest. J.A. 434–77, 3841–49, 5047–57. In its decisions to institute, the Board rejected Worlds's argument, concluding that "Patent Owner has not demonstrated that Activision is an unnamed real party in interest in this proceeding." J.A. 511, 3878, 5095.

The Board issued final written decisions in these three IPRs on November 10, 2016; November 28, 2016; and December 6, 2016. In these final decisions, the Board reiterated its rejection of Worlds's real-party-in-interest argument by referring back to the analysis in its institution decisions. J.A. 106–07, 194–95, 258–59. Finding the petitions not time-barred, the Board proceeded to address the patentability of the instituted claims.

Worlds timely appealed each final written decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II

This consolidated appeal presents two issues. First, Worlds contends that Bungie's IPR petitions were time-barred because an alleged real party in interest, Activision, had been served with a complaint alleging infringement of these patents over one year prior to the IPRs' filing dates. Second, Worlds appeals the Board's substantive obviousness analysis.

## A

Under 35 U.S.C. § 312(a)(2), an IPR petition "may be considered only if . . . the petition identifies all real parties in interest." Correctly identifying all real parties in interest with respect to each IPR petition is important, as the determination may impact whether a petition may be instituted. *See* 35 U.S.C. § 315(a)(1) (concerning a real party in interest's civil action challenging the patent's validity); *id.* § 315(b) (concerning a patent owner's civil action against a real party in interest). It may also limit the arguments available in subsequent proceedings. *See id.* § 315(e). In this case, Worlds argues that Bungie's IPR petitions were time-barred under § 315(b) because they were filed over one year after Worlds served Activision, the alleged real party in interest, with a complaint alleging infringement of the challenged patents.[5]

---

[5]   The parties' briefing in this case occurred prior to this court's en banc decision in *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364 (Fed. Cir. 2018) (en banc). As such, Bungie in its briefing relied on *Achates Reference Publishing, Inc. v. Apple Inc.* to argue that the Board's real-party-in-interest determination for purposes of

On appeal, Worlds contends that the Board placed the burden of persuasion on the patent owner to prove that Bungie's petitions were time-barred under § 315(b) because Activision was a real party in interest, and that this allocation of the burden was error. These appeals therefore require us to determine the appropriate burden framework for analyzing the real-party-in-interest determinations in these IPRs. Worlds has not sought review of the Board's order denying Worlds's motion for discovery on this issue.

1

Absent from the Board's analysis of the real-party-in-interest issue is any clear statement of what, if any, burden framework the Board used to analyze the evidence presented in these IPRs, including an identification of which party the Board viewed as bearing the burden of persuasion.

Both Worlds and Bungie point us to *Atlanta Gas Light Co. v. Bennett Regulator Guards, Inc.* as representing a burden framework used by other Board panels in the real-party-in-interest analysis. *See* IPR2013-00453, Paper 88 (P.T.A.B. Jan. 6, 2015). Although there is no indication that the Board relied on *Atlanta Gas Light* in these appeals, we find it appropriate to begin our analysis with that decision, given the parties' focus on that framework.

---

evaluating the time bar under § 315(b) is not subject to review by this court. 803 F.3d 652, 659 (Fed. Cir. 2015), *overruled by Wi-Fi One*, 878 F.3d at 1367. In *Wi-Fi One*, the court overruled *Achates* and held that the § 314(d) bar on the appeal of the Director's determination of whether to institute an IPR proceeding does not apply to the Board's time-bar determinations under § 315(b), thus making such time-bar determinations reviewable on appeal. *Wi-Fi One*, 878 F.3d at 1367.

Under *Atlanta Gas Light*, the Board generally accepts an IPR petitioner's identification of the real parties in interest at the time the petition is filed. *Atlanta Gas Light*, Paper 88 at 7 (citing *ZOLL Lifecor Corp. v. Philips Elec. N. Am. Corp.*, IPR2013-00606, Paper 13 at 7 (P.T.A.B. Mar. 20, 2014), which cites 77 Fed. Reg. at 48,695).[6] *Atlanta Gas Light* explained that this initial acceptance "acts as a rebuttable presumption" that benefits the IPR petitioner. *Id.* Quoting Federal Rule of Evidence 301, the Board stated that "[t]he party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. *But this rule does not shift the burden of persuasion, which remains on the party who had it originally.*" *Id.* at 8 (quoting Fed. R. Evid. 301 (emphasis in Board's opinion)). From this, the Board in *Atlanta Gas Light* explained that, where "a patent owner provides sufficient rebuttal evidence that reasonably brings into question the accuracy of a petitioner's identification of the real parties in interest, the burden remains with the petitioner to establish that it has complied with the statutory requirement to identify all the real parties in interest." *Id.*

We largely concur with the burden framework used in *Atlanta Gas Light*. As explained below, we agree that the IPR petitioner bears the burden of persuasion to demonstrate that its petitions are not time-barred under § 315(b) based on a complaint served on a real party in

---

[6] The Federal Register notice cited in *Atlanta Gas Light* includes the PTO's responses to public comments. In response to a question regarding burdens of proof and persuasion in a challenge to the real-party-in-interest identification, the PTO stated: "The Office generally will accept the petitioner's 'real party-in-interest' identification at the time of filing the petition." Part III, 77 Fed. Reg. 48,680, 48,695 (Aug. 14, 2012).

interest more than a year earlier.  We also agree that an IPR petitioner's initial identification of the real parties in interest should be accepted unless and until disputed by a patent owner.  And although we disagree with treating this initial acceptance as a "rebuttable presumption" that formally shifts a burden of production to the patent owner, we agree that a patent owner must produce some evidence to support its argument that a particular third party should be named a real party in interest.

At the outset, there can be no doubt that the IPR petitioner bears the ultimate burden of persuasion to show that its petitions are not time-barred under § 315(b) based on a complaint served on an alleged real party in interest more than a year earlier.  On this point, the relevant statute is clear.  Under § 556(d) of the Administrative Procedure Act ("APA"), "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof."  5 U.S.C. § 556(d); *see also id.* § 551(6) (defining "order" to mean "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing").  The Supreme Court has explained that this provision of the APA refers to the burden of persuasion.  *Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 276 (1994) ("[W]e understand the APA's unadorned reference to 'burden of proof' to refer to the burden of persuasion.").  Thus, because the IPR petitioner is the party seeking an order from the Board, § 556(d) requires the petitioner to bear the burden of persuasion.  And, while § 556(d) allows for exceptions to be provided by statute, no such exception exists here.

This allocation of the burden of persuasion makes sense.  First, it is consistent with the general rule that "[a]bsent some reason to believe that Congress intended otherwise, . . . we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking

relief." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57–58 (2005); *see also id.* at 57 (indicating that § 556(d) reflects the "general rule" that the party seeking court action bears the burden of persuasion regarding the essential aspects of the party's claims).[7] And as this court held in *Wi-Fi One*, "[t]he timely filing of a petition under § 315(b) is a condition precedent to the Director's authority to act." 878 F.3d at 1374; *see also* 35 U.S.C. § 312(a)(2) (requiring an IPR petitioner to identify all real parties in interest). Second, an IPR petitioner will usually be in a better position, at least relative to the patent owner, to access evidence relevant to the real-party-in-interest inquiry. *See United States v. N.Y., New Haven & Hartford R.R. Co.*, 355 U.S. 253, 256 n.5 (1957) ("The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary.").

Having identified the party bearing the burden of persuasion, we turn to the proper procedure for analyzing whether a petition should be time-barred based on a complaint served on a real party in interest more than a year earlier. As discussed above, the Board in *Atlanta Gas Light* explained that its practice of "initially accepting the identification of real parties in interest in a petition as accurate acts as a rebuttable presumption that

---

[7]  Although exceptions to this general rule exist, for example, where elements of a plaintiff's claim "can fairly be characterized as affirmative defenses or exemptions," *Schaffer*, 546 U.S. at 57, we do not view § 315(b) as an affirmative defense. Instead, unlike a traditional statute of limitations defense, "[t]he timely filing of a petition under § 315(b) is a condition precedent to the Director's authority to act," and "[it] sets limits on the Director's statutory authority to institute." *Wi-Fi One*, 878 F.3d at 1374.

benefits petitioners." *Atlanta Gas Light*, Paper 88 at 7. Referring to Federal Rule of Evidence 301, the Board indicated that such a presumption shifts the burden of production to the patent owner, who then must produce evidence sufficient to "reasonably bring[] into question the accuracy of a petitioner's identification of the real parties in interest." *Id.* at 8.

Initially, we question the Board's practice of creating a "presumption" by its acceptance of a petitioner's initial identification of the real parties in interest. Generally, for a party to gain the benefit of a presumption, the party must prove certain basic facts from which the presumed fact is then inferred according to the relevant substantive law. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1035–37 (Fed. Cir. 1992) (en banc) (explaining that the presumption of laches, which was a defense available in patent cases prior to *SCA Hygiene*, arose upon proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity), *abrogated on other grounds by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954 (2017); 21B Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5122 (2d ed. 2005) ("[A] true presumption cannot arise without proof of some 'basic fact'. . . ."). In the real-party-in-interest context at issue here, the relevant statute and regulations do not require evidentiary proof of such basic facts. *See* 35 U.S.C. § 312(a)(2) (requiring a petition to "identif[y] all real parties in interest"); 37 C.F.R. § 42.8(b)(1) (requiring a party to "[i]dentify each real party-in-interest for the party"); *see also id.* § 42.104(a) (requiring a petitioner to "certify . . . that the petitioner is not barred or estopped from requesting an inter partes review challenging the patent claims on the grounds identified in the petition").

Moreover, presumptions are usually created based on certain policy considerations, such as correcting an imbalance due to one party's superior access to sources of proof, or promoting efficiency by presuming a fact to be true where the existence of certain basic facts makes the truth of the presumed fact highly probable. *See* 2 George E. Dix, et al., McCormick on Evidence § 343 (7th ed. 2016). In the real-party-in-interest context, however, we see no particular need to create a formal presumption—especially a presumption that would disfavor the party that likely has inferior access to potential sources of proof.

Regardless, we agree that an IPR petitioner's initial identification of the real parties in interest should be accepted unless and until disputed by a patent owner. But instead of viewing this as a presumption, we simply view this as practical. In short, we see no reason for the Board to question an IPR petitioner's identification of the real parties in interest unless and until a patent owner has chosen to raise the issue.

The next question then becomes: what must a patent owner do to sufficiently raise the issue? In *Atlanta Gas Light*, the Board viewed the "presumption" created by the IPR petitioner's initial identification of the real parties in interest as shifting the burden of production to the patent owner. From this, the Board explained that, where "a patent owner provides *sufficient rebuttal evidence that reasonably brings into question the accuracy of a petitioner's identification of the real parties in interest*, the burden remains with the petitioner to establish that it has complied with the statutory requirement to identify all the real parties in interest." *Atlanta Gas Light*, Paper 88 at 8 (emphasis added). As explained above, we disagree with the use of a presumption in this context. We agree, however, that a patent owner must produce *some* evidence that tends to show that a particular third party should be

named a real party in interest.[8]  A mere assertion that a third party is an unnamed real party in interest, without any support for that assertion, is insufficient to put the issue into dispute.

2

In view of this burden framework, we next turn to the Board's analysis of the evidence in this case.  In its IPR petitions, Bungie listed itself—and only itself—as the real party in interest.[9]  J.A. 354, 3728, 4918.  Worlds then presented evidence that a particular third party, Activision, was an unnamed real party in interest, including:  (1) the DevPub Agreement between Bungie and Activision, which related to development of *Destiny*; (2) the November 2014 letter indicating Worlds's intent to add Bungie's *Destiny* products to the Activision litigation; and  (3) the fact that the five patents asserted in the Activision litigation were the same five patents Bungie challenged in its IPR petitions.

---

[8]  For purposes of deciding this case, we need not address the quantum of support required from a patent owner.  If it were not framed in terms of a presumption, the standard used in *Atlantic Gas Light*—evidence that "reasonably brings into question the accuracy of a petitioner's identification of the real parties in interest"—may prove useful.  In this case, it suffices to say that, as discussed below, Worlds presented more than enough evidence to sufficiently put this issue into dispute.

[9]  Bungie's identification of the real parties in interest reads, in its entirety:  "Bungie, Inc. is the real party-in-interest."  J.A. 354, 3728, 4918.  Given the statutory requirement that an IPR petition list "*all* real parties in interest," 35 U.S.C. § 312(a)(2) (emphasis added), Bungie's statement effectively represents that Bungie is the *sole* real party in interest.

Worlds focused much of its argument on Recital 7A.15 of the DevPub Agreement, which Worlds views as giving Activision an opportunity to control the instant IPRs.[10] This provision is found in the section of the DevPub Agreement titled "Activision's Responsibilities" and provides that Bungie is responsible for "[c]onducting legal reviews of the Products to ensure that all Intellectual Property and other rights are fully cleared for use." J.A. 2924, Recital 7A.15.[11] The section further provides that these legal reviews "shall be subject to prior review and approval of Activision, (budget to [sic] mutually approved) such approval not to be unreasonably withheld." *Id.* From this evidence, Worlds argued before the Board that these IPRs are "legal reviews" necessary to clear intellectual property rights, and that Activision had the opportunity to control the IPRs, making Activision a real party in interest. In response, Bungie presented a different interpretation of the "legal reviews" provision, arguing that, in the context of a videogame development agreement, a "legal review[]" refers to "reviewing the title, script, and visual and audio assets to ensure that any appropriate rights have been obtained and that they do

---

[10] Worlds also emphasized other portions of the DevPub Agreement, such as the section regarding Activision's participation in Bungie's Board of Directors' meetings, J.A. 2938, Recital 18.2, as well as the section requiring Activision to pay "development advances" to Bungie to "fully fund [Bungie's] operations directly related to the development of the Products," J.A. 2928–29, Recital 10.1. And it also pointed to representations and warranties made by Bungie, including that the products would not violate the rights of others. *See* J.A. 2933, Recital 14.1.2.

[11] "Intellectual Property" is defined in the DevPub Agreement to include patents and patent rights. J.A. 2919, Recital 6.1.

not infringe any trademarks or copyrights." J.A. 415 (Opp. to Worlds's Discovery Mot.).[12]

The Board flatly rejected Worlds's argument that Bungie's IPRs could be considered "legal review[s] of a 'Product,'" first in its order denying Worlds's discovery motion, then again in its institution decisions. J.A. 429 (Discovery Order) (stating that "[a] legal review of a 'Product' under the Agreement and other provisions do not specify, require, or necessarily include filing an IPR against a patent"); J.A. 507, 3874, 5092 (Institution Decisions) (stating that Worlds's argument was based on a faulty assumption that "legal reviews" could include IPRs). The Board's institution decisions explained that the IPRs involved a *patent* rather than a *product*, and thus the IPRs could not be considered "legal reviews of a Product" that would give Activision a right of review and approval. J.A. 507 ("The only subject of this proceeding is the '856 patent; this proceeding does not involve any product. Thus, Patent Owner has not shown that this proceeding falls within the scope of a 'legal review[] of the Products' . . . ." (citation omitted)); *see also* J.A. 3874, 5092.

After rejecting each of Worlds's other arguments regarding the DevPub Agreement, the Board concluded that "Patent Owner has not demonstrated that the Agreement gives Activision any opportunity to control this proceeding." J.A. 509, 3877, 5094. In so doing, the Board also relied on statements in Bungie's Opposition to Worlds's Motion for Discovery, including that "Bungie is solely responsible for the cost and control of the IPRs against [Worlds's] patents," J.A. 409–10, and that "Activision's payment of development advances to Bungie funded the development of the *Destiny* videogame, not these IPRs,"

---

[12] The parties maintain their respective interpretations of this provision on appeal.

J.A. 416.  *See* J.A. 510, 3877, 5094–95 (relying on these statements).  In Bungie's briefing, those statements were made without citations to any evidence.  *See* J.A. 409–10, 416.  Nonetheless, from these statements, the Board concluded that "Petitioner has expressly denied any control or funding of this proceeding by Activision," and "[o]n this record, we accept Petitioner's express representations that Activision is not controlling or funding this proceeding."  J.A. 509–10, 3877, 5094–95.  The Board ultimately concluded its real-party-in-interest analysis by stating that "Patent Owner has not demonstrated that Activision is an unnamed real party in interest in this proceeding.  Accordingly, Patent Owner has not established that the Petition violates 35 U.S.C. § 312(a)(2) or that institution of review is barred under 35 U.S.C. § 315(b)."  J.A. 511, 3878, 5095.  The Board reaffirmed this analysis in its final written decisions.  J.A. 106–07, 194–95, 258–59.

Under the framework we have outlined above, the Board was entitled to rely, at least initially, on Bungie's list of all real parties in interest, which raised no time-bar issues under the facts presented.  Here, however, Worlds presented evidence sufficient to put Bungie's identification of itself as the sole real party in interest into dispute.  Thus, in this circumstance, the Board could no longer merely rely upon Bungie's initial identification of the real parties in interest.  Instead, the Board was required to make any factual determinations necessary to evaluate whether Bungie had satisfied its burden to demonstrate that its petition was not time-barred based on the complaints served upon Activision, the alleged real party in interest.

This marks the point in the analysis at which the burden of persuasion becomes essential.  There is here a complete absence of any statement as to which party should bear the burden of persuasion.  At the same time, the Board rejected the patent owner's arguments because

the Board was "unpersuaded that there is sufficient evidence that Activision is an unnamed real party in interest for the reasons given in the Institution Decision." J.A. 107, 195, 259. This implies that the Board assumed the burden of persuasion rests with the patent owner. Moreover, the Board's potential reliance on the rebuttable presumption from *Atlanta Gas Light* may have effectively skewed the burden of persuasion despite *Atlanta Gas Light*'s statement that it was not approving such a shift. Under these circumstances, we cannot discern whether the Board placed the burden on Worlds, the patent owner, to persuade the Board that Bungie failed to list a real party in interest that would render the petitions time-barred under § 315(b). As discussed above, this would have been improper.

As an aside, we have some concern that the Board may have relied on attorney argument as evidence that Activision was not controlling or funding these IPRs. *See* J.A. 510, 3877, 5095 (citing Bungie's briefing and stating that "[o]n this record, we accept Petitioner's express representations that Activision is not controlling or funding this proceeding"); *see also Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence."). This is particularly concerning given that the Board's apparent reliance on such statements seemed to outweigh the actual evidence presented by Worlds. Instead of citing evidence to support this factual conclusion, the Board merely cited attorney argument from Bungie's briefing—attorney argument that itself failed to cite evidence, such as affidavits or declarations. *See* J.A. 510, 3877, 5095 (Institution Decisions); J.A. 409–10, 416 (Bungie's briefing).

In light of these concerns, we find it appropriate to remand this case to the Board for further consideration of the real-party-in-interest issue. In doing so, we do not speak to how the evidence should be weighed, and we do not prejudge what conclusion the Board, applying a

proper analysis, may reach as to whether Activision is a real party in interest in these proceedings. We note, however, that we have issued opinions since the Board issued its final written decisions that clarify the meaning of the term "real party in interest" in the context of § 315(b). *See Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1351 (Fed. Cir. 2018) (explaining that determining whether a party is a real party in interest "demands a flexible approach that takes into account both equitable and practical considerations, with an eye toward determining whether the non-party is a clear beneficiary that has a preexisting, established relationship with the petitioner"); *Wi-Fi One, LLC v. Broadcom Corp.*, 887 F.3d 1329, 1336 (Fed. Cir. 2018) (noting that the Board, in rendering § 315(b) determinations, "seeks to determine whether some party other than the petitioner is the 'party or parties at whose behest the petition has been filed'" (citing Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,759 (Aug. 14, 2012))). We remand with instructions for the Board to weigh the evidence in a manner that places the ultimate burden of persuasion on Bungie, the IPR petitioner, and to do so in a manner consistent with our recent precedent.

3

Bungie briefly argues on appeal that, in light of issue preclusion principles, Worlds should be estopped from contesting the Board's real-party-in-interest determination. Bungie bases its preclusion argument on the three other IPRs that proceeded on a similar time frame as the three IPRs now on appeal.[13] In those IPRs, Worlds ar-

----

[13] The Board issued final written decisions in the three IPRs on appeal on November 10, 2016; November 28, 2016; and December 6, 2016. Meanwhile, the Board issued final written decisions in the three unappealed

gued, as it does here, that Bungie should have named Activision as a real party in interest. The Board disagreed. Worlds did not appeal the Board's final written decisions in those IPRs, and the time for appeal has now expired.

The general rule for issue preclusion (also called collateral estoppel) is "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) (quoting Restatement (Second) of Judgments § 27 (1982)). This general rule is "subject to certain well-known exceptions." *Id.* (citing Restatement (Second) of Judgments § 28 (1982) as listing exceptions).

Bungie devotes just two pages of its briefing to arguing that the basic requirements of issue preclusion are satisfied in this case. Appellee's Br. 62–63. In similarly cursory fashion, Worlds's Reply Brief compiles a handful of conclusory assertions in an attempt to avoid issue preclusion. Reply Br. 30–32. And because of the timing of the six IPRs, the Board did not consider issue preclusion.

In this case, such a limited record is insufficient for this court to decide, for the first time on appeal, whether issue preclusion should apply to this unusual set of facts. The record before us is scant on details regarding the issues raised in the three unappealed IPRs. Based on the limited record before us, we cannot say that the "issue" is the same between the now-final IPRs and the IPRs cur-

---

IPRs on November 28, 2016 (for two proceedings) and November 30, 2016.

rently on appeal. Bungie, of course, views the "issue" as the ultimate determination of whether Activision is a real party in interest. *See* Appellant's Br. 63. But in our view, the determination of whether a party is a real party in interest may differ from one IPR to the next, even among a set of seemingly related IPRs. Without a more comprehensive understanding of the issues raised in each case, we decline to apply collateral estoppel. Instead, given that we are already remanding this case with regard to the merits of the real-party-in-interest analysis, we find it appropriate to have the Board analyze in the first instance whether issue preclusion should apply under these particular circumstances. In doing so, the Board should develop a more complete record that explains the differences, if any, between the issues raised in present IPRs and the unappealed IPRs. The Board should also consider any relevant exceptions to issue preclusion raised by the parties and explain why such exceptions do or do not apply to these facts. *See* Restatement (Second) of Judgments § 28 (1982); *see also In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1349–50 (Fed. Cir. 2008) (regarding issue preclusion where a party did not appeal all cases consolidated in a multi-district litigation proceeding).

B

Because of our conclusions with respect to the real-party-in-interest issue, we need not address the merits of the parties' invalidity arguments at this time. We therefore vacate the Board's merits decisions in their entirety, without speaking to the merits of the Board's analysis. On remand, if the Board determines that the IPRs are not time-barred, the Board may use its prior merits analysis in new final written decisions, and a future panel of the court will have occasion to review the merits of the Board's analysis at that time, should the parties choose to appeal.

### III

For the foregoing reasons, the Board's final written decisions in these three consolidated appeals are vacated. On remand, the Board should first address whether Worlds is estopped from arguing the real-party-in-interest issue. The Board should thoroughly consider the posture of the related proceedings, as well as any relevant exceptions to collateral estoppel. If the Board determines that collateral estoppel does not apply, the Board should then reevaluate the merits of the real-party-in-interest issue. And, in light of this court's recent guidance on the substantive real-party-in-interest inquiry, the Board, in its discretion, should consider whether to allow for additional discovery on this issue.[14]

**VACATED AND REMANDED**

COSTS

The parties shall bear their own costs.

---

[14] *See Applications in Internet Time*, 897 F.3d 1336; *Wi-Fi One*, 887 F.3d 1329; *cf. WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308 (Fed. Cir. 2018).